UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BINTU KABBA, as Parent and Natural Guardian
of O.F., and BINTU KABBA, Individually,

                                                                        25-cv-02282

                Plaintiffs,

-against-


MELISSA AVILÉS-RAMOS, in her official
capacity as Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

                Defendants.
------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF A PRELIMINARY INJUNCTION**


Nicole Lancia, Esq.
Liberty and Freedom Legal Group, Ltd.
*Attorneys for the Plaintiff(s)*
105 East 34th Street, #190
New York, NY 10016
nicole@pabilaw.org

# **TABLE OF CONTENTS**

*Page(s)*

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL BACKGROUND ....................................................................................................... 6

ARGUMENT ........................................................................................................................... 8

    I.   PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING O.F.'S PENDENCY AT iBRAIN FOR THE 2024-2025 SCHOOL YEAR AND EARLIER SCHOOL YEARS ......................................... 8

    II.  PLAINTIFF IS NOT SEEKING IMMEDIATE OR "FAST-TRACK" FUNDING OF PENDENCY PAYMENTS……………………………………18

    III. DEFENDANTS HAVE GRANTED THEMSELVES A STAY……………....20

CONCLUSION......................................................................................................................21

# Table of Authorities

**Cases**

*Abrams v. Porter*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 (2d Cir. Dec. 9, 2021)..................18

*A.M. v. Cornwall Cent. Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014) ................................................................................................ 7, 12

*Agudath Israel of Am. v. Cuomo*,
   983 F.3d 620 (2d Cir. 2020) ...................................................................................................... 14

*Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*,
   560 F. Supp. 701 (W.D.N.Y. 1983) ................................................................................................ 11

*Bd. of Educ. of the Cnty. of Boone v. K.M.*, Civil Action No. 2:14 CV 10563
   (S.D.W. Va. Mar. 31, 2015) ……………………………………………………………..19

*Casey K. v. St. Anne Community High School District No. 302*,
   400 F. 3d 508, 511 (7th Cir. 2005) ……………………………………………………………20

*C.F. ex-rel. R.F. v. New York City Dep't of Educ.*,
746 F.3d 68 (2d Cir. 2014)……………………………………………………………………….5, 6

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
   689 F. Supp. 197 (S.D.N.Y. 1988).............................................................................................. 2

*Doe v. E. Lyme Bd. of Educ.*,
   790 F.3d 440 (2d Cir. 2015) ..................................................................................... 1, 8, 9, 12

*Draper v. Atlanta Indep. Sch. Sys.*, 2006 U.S. Dist. LEXIS 40964 (N.D. Ga. June 19, 2006)…………….19

*Drinker by Drinker v. Colonial Sch. Dist.*,
   78 F.3d 859 (3d Cir. 1996) .......................................................................................................... 13

*Olson v. Robbinsdale Area Sch., No. CIV.04-2707 RHK/AJB*,
   2004 WL 1212081 (D. Minn. May 28, 2004) .................................................................. 12, 15

*John M. v. Bd. Of Educ.*, 2006 U.S. Dist. LEXIS 73826
   (N.D. Ill. September 26, 2006) ……………………………………………………………19, 20

*Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*,
   580 U.S. 386 (2017)...................................................................................................................... 6

*Joshua A. v. Rocklin Unified Sch. Dist.*,
   559 F.3d 1036 (9th Cir. 2009) ..................................................................................................... 19

*L.D. v. Hawaii Dep't of Educ.*,
   727 F.3d 911 (9th Cir. 2013)……………………………………………………………..14

*LV v. NYC DOE*, No. 03-CV-09917 (LAP) (Feb. 18, 2021)……………………………….……17, 18

*Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023)………………..………………………………….12

*M.R. v. Ridley Sch. Dist.*,
   744 F.3d 112 (3d Cir. 2014) .......................................................................................................... 6

*N.J. v. New York*,
   872 F. Supp. 2d 204 (E.D.N.Y. 2011) ........................................................................................ 11

*Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
   400 F.3d 508 (7th Cir. 2005) ........................................................................................................ 7

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
   96 F.3d 78 (3d Cir. 1996)………………………………………………………………….8, 13, 20

*Tamalpais Union High Sch. Dist. v. D.W.*,
   2016 U.S. Dist. Lexis 137971 (N.D. Cal., October 4, 2016)……………………………………19

*T.K. v. New York City Dep't of Educ.*,
   810 F.3d 869 (2d Cir. 2016) ........................................................................................................ 6

*Thomas M.*,
   386 F.3d at 160–61 ...................................................................................................................... 9

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989) ...................................................................................................... 11

*Ventura de Paulino v. New York City Dep't of Educ.*,
   959 F.3d 519 (2d Cir. 2020) ……………………………………………………………1, 4, 8, 10, 11

*Y.F. v. New York City Dep't of Educ.*,
   No. 1:21-CV-00711 (MKV), 2021 WL 1164571 (S.D.N.Y. Mar. 26, 2021) ..................................... 11, 14

*Zvi D. by Shirley D. v. Ambach*,
   694 F.2d 904 (2d Cir. 1982) ................................................................................................ 1, 9, 12

**Statutes**

20 U.S.C. § 1415................................................................................................ 1, 2, 3, 4, 6, 7, 8, 9, 11, 13

N.Y. Educ. Law § 4404 ................................................................................................................... 1

**Other**

34 C.F.R. § 300.518 ........................................................................................................................ 1

Fed. R. Civ. P. 65............................................................................................................................ 1

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for a Preliminary Injunction under the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j) and Fed. R. Civ. P. 65(a). Plaintiffs seek an order compelling Defendants, MELISSA AVILÉS-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively, "DOE"), to fully and immediately implement the Student's pendency placement at his educational program, International Academy for the Brain (iBRAIN), including tuition, related services, special transportation, and nursing services, retroactive to the start of the 2024-2025 school year in July 2024.

Under IDEA's pendency provision, funding for a disabled student's current educational placement is an automatic entitlement triggered by filing a due process complaint. 20 U.S.C. § 1415(j); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). Courts have repeatedly recognized that the stay-put provision operates as an "automatic preliminary injunction," maintaining the student's educational status quo until litigation is resolved. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).

Here, Plaintiffs' pendency rights were unambiguously established by the Impartial Hearing Officer's ("IHO") Order on Pendency, which found that iBRAIN was the student's operative pendency placement. During the pendency of a due process proceeding, federal and state law mandate that the student must remain in their then-current educational placement unless the parent and DOE agree otherwise. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(4)(a) (McKinney). Courts recognize that pendency is critical in ensuring educational continuity for students with disabilities, preventing unilateral disruptions in placement.

The DOE has failed to recognize the IHO's Pendency Order identifying iBRAIN as the student's operative pendency placement and fully fund the Student's pendency program as required by law. The DOE's disregard for the IHO's binding pendency determination violates the IDEA and warrants immediate relief.

Because pendency is an automatic entitlement under the IDEA, Plaintiffs need not satisfy the traditional preliminary injunction standard. *See Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988) (holding that pendency injunctions are not subject to traditional preliminary injunction factors). Nevertheless, even under the traditional standard, Plaintiffs can readily establish: (1) irreparable harm due to the DOE's failure to honor the Pendency Order, (2) a clear likelihood of success on the merits, and (3) that the balance of hardships and public interest weigh decisively in favor of enforcement of the Student's statutory rights.

For these reasons, Plaintiffs seek an order compelling DOE's full and immediate compliance with its pendency funding obligations, ensuring the uninterrupted provision of tuition, related services, transportation, and nursing services at iBRAIN, consistent with the findings of fact and reasoning of the IHO's Pendency Order and 20 U.S.C. § 1415(j).

## STATEMENT OF FACTS

Plaintiff Bintu Kabba is the parent and natural guardian of O.F., a student with multiple severe diagnoses that include a primary diagnosis of cerebral palsy, and secondarily, aphasia, motor delay, and cognitive delay. [ECF No. 28–1, at 4]. O.F. suffers from a brain injury resulting in severe impairments in the following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem-solving, sensory, perceptual, and motor abilities, psychosocial behavior, physical functions, information processing, and speech. [*Id.*]. O.F. is diagnosed with Hydrocephalus, Spina Bifida and Congenital Malformation Syndrome. These impairments have adversely affected O.F.'s educational performance. [*Id.*].

O.F. is non-ambulatory and primarily communicates through her AAC device, a single voice output switch, and "requires a high degree of individualized attention and intervention throughout the school day." [ECF No. 28-1, at 4]. She requires a 1:1 direct instruction model, with a full-time 1:1 paraprofessional during the school day to assist with all activities of daily living. [*Id.*]. Oummou requires a modified environment reducing visual and sound distractions and requires a two-person transfer to and from her wheelchair or other repositioning. In addition, periodic breaks, additional processing time for tasks, and purposeful repetition of tasks during therapy sessions and educational instruction are required to accommodate O.F.'s significant needs in order to make progress towards all annual goals. [*Id.*] Given the intensity of her needs, O.F. requires an individualized, structured educational program in a small, highly supportive classroom environment, along with an extended school day and extended school year ("ESY") to prevent regression. [*Id.* at 4–5].

On June 25, 2024, the Plaintiffs filed a Due Process Complaint ("DPC") to maintain O.F.'s placement at iBRAIN, including related services, special transportation, and 1:1 nursing. [ECF No. 28–1, at 2–4]. This DPC was assigned IHO Case No. 275761, and IHO Catina Venning was appointed to adjudicate it. ECF No. 28 ¶¶ 39-42. Plaintiffs asserted that the New York City Department of Education ("DOE") failed to offer or provide O.F. a Free Appropriate Public Education ("FAPE") for the 2022–23 and 2023–24 extended school years as well as years prior. [ECF No. 28–1, at 2]. The DPC alleged the DOE failed to, *inter alia*: provide a Procedural Safeguards Notice; provide a School Location Letter; conduct an evaluation or reevaluation (at least every 3 years); and provide Parents with information on how to request an Independent Educational Evaluation at public expense. [*Id.* at 2, 5].

On June 14, 2024, Plaintiffs sent a Ten-Day Notice ("TDN") to the DOE advising, among other things, that no school location letter for the 2024–2025 ESY had been issued to the Plaintiffs and that DOE had failed to offer O.F. a FAPE. [ECF No. 28–2, at 12]. In the TDN, Plaintiffs

8

requested the DOE maintain O.F's placement at iBRAIN as the status quo through IDEA's "stay-put" provision under 20 U.S.C. § 1415(j), and sought public funding for the same, since iBRAIN was the operative placement at the time the due process proceedings were commenced and therefore established O.F.'s pendency throughout the administrative and judicial proceedings relative to Plaintiff's DPC for the 2024–2025 SY. [*Id.* at 12].

On July 2, 2024, filed a DPC alleging, among other things, that Defendants had denied O.F. a FAPE, and seeking to maintain O.F.'s program/placement and related services at iBRAIN, including special transportation and individual nursing services for the 2024-2025 school year. [ECF No. 28–2, at 2]. This DPC was assigned IHO Case No. 277877, and IHO Catina Venning was appointed to adjudicate it. See ECF No. 28, ¶¶ 65-66. The DPC alleged that the DOE failed to, *inter alia*: provide a Procedural Safeguards Notice; provide a School Location Letter; conduct an evaluation or reevaluation (at least every 3 years); provide Parents with information on how to request an Independent Educational Evaluation at public expense. [ECF No. 28-2, at 6].

Within the DPC, Plaintiff asked for an interim order on pendency and submitted a proposed pendency order. Plaintiff argued that iBRAIN was the operative placement, as reproduced below in relevant part:

> "Courts tend to rely on the 'operative placement' factor"-which, as noted, looks to the child's placement at the time the due process complaint is filed-"in circumstances in which there was no prior-implemented IEP that might guide a determination of a 'current educational placement.'" *Navarro Carrilo v. New York City Dep't of Educ.,* 384 F. Supp. 3d 441 (S.D.N.Y. 2019), *vacated and remanded sub nom. Ventura de Paulino v. New York City Dep't of Educ.,* 959 F.3d 519 (2d Cir. 2020); *see also Pardini v. Allegheny Intermediate Unit,* 420 F.3d 181, 190 (3d Cir. 2005) (explaining that, where no prior IEP has been implemented, a child's pendency placement is "the operative placement under which the child is actually receiving instruction at the time the dispute arises").

> The Second Circuit has not specifically addressed whether the operative placement factor is a last resort to be considered only when no prior IEP was ever implemented. At least two courts in this district, however, have determined a child's Pendency based on the operative placement factor, even when a previously implemented IEP existed. In *Angamarca v. New York City Dep't of Educ.,* No. 19 CIV. 2930 (PGG),

> 2019 WL 3034912, at *6 (S.D.N.Y. July 11, 2019), the Court found it unreasonable "to conclude that a placement described in an IEP issued five years ago" could establish "a placement ... that is appropriate now," because that placement did not "reflect the status quo." And in *Avaras v. Clarkstown Cent. Sch. Dist.,* No. 18 CV 6964 (NSR), 2018 WL 4080352, at *3 (S.D.N.Y. August 27, 2018), the IEP most recently implemented was from the second grade, which the Court noted was "outdated and inapplicable" to the needs of the child, who was then in high school.
>
> The *Angamarca* and *Avaras* courts thus determined that the child's pendency placement was at the "operative placement" when their parents commenced suit against the school districts rather than the placement established in the then-outdated IEPs. *Id.; Hidalgo v. New York City Dept. of Educ.,* No. 19-CV-2590 (RA), 2019 WL 5558333, at *1 (S.D.N.Y. October 29, 2019).
>
> * * * *
>
> The "stay put" or pendency placement provision of the IDEA, codified at 20 U.S.C. § 1415(j), provides for a mandatory injunction, requiring that DOE fund Student's educational placement at the current school as the "pendency placement" until the final adjudication of the underlying case. In this regard, it is Parent's position that the Student's pendency placement is the educational program and placement the Student has been receiving services and continues to receive services, at iBRAIN, under the equitable authority granted to the hearing officer by 20 U.S.C. § 1415(i)(2)(B)(iii).

[ECF No. 28-2, at 18-20]. A copy of the full proposed order on pendency is attached hereto for the Court's convenience as **Exhibit 1**.

In an Order of Consolidation dated August 1, 2024, IHO Venning consolidated IHO Nos. 275761 and 277877 ("Consolidated 275761"). ECF No. 28, ¶ 71.

The IHO issued an Order on Pendency on November 18, 2024. The IHO found that the iBRAIN program consisted of:

> a 6:1:1 class, receiving the following services: OT: four (4) times per week for 60 minutes; PT: five (5) times per week for 60 minutes; SL: five (5) times per week for 60 minutes; MT: two (2) times per week for 60 minutes; AT: one (1) time per week for 60 minutes; and PCT: one (1) time per month for 60 minutes.

[ECF No. 28-4, at 3.] In fact, the IHO stated, "The District did not submit any exhibits" in support of their position on Pendency prior to the September 4, 2024 Pendency Hearing and "failed to issue, at any point between the complaint and the pendency hearing, a school location letter (SLL) at which the Student could receive a FAPE. [*Id.* 4-5.] Thus, it is not disputed the IHO found that a)

10

O.F.'s last implemented IEP was the August 22, 2023, CPSE IEP, when O.F. was three years old in preschool; b) the Department of Education did not offer an actual school location or placement that could implement this CPSE IEP; and c) the iBRAIN program consisted of "a 6:1:1 class, receiving the following services: OT: four (4) times per week for 60 minutes; PT: five (5) times per week for 60 minutes; SL: five (5) times per week for 60 minutes; MT: two (2) times per week for 60 minutes; AT: one (1) time per week for 60 minutes; and PCT: one (1) time per month for 60 minutes."

The IHO thereafter ordered: (1) the operative pendency placement at iBRAIN retroactive to the date Plaintiffs filed the DPC (June 26, 2024 in Case No. 275761), (2) that pendency shall remain at iBRAIN "unless modified by a subsequent order or agreement, shall continue until the conclusion of the case," and (3) "Within one week of this order, the District shall provide a school location" that could implement the CPSE IEP. [*Id.* at 3-5]. The DOE never provided an actual school location, there was no subsequent order or agreement, and the Parent's position continues to be the Pendency placement remains at iBRAIN.

Despite the IHO's clear ruling, DOE has failed to fully implement O.F.'s pendency placement at iBRAIN, resulting in significant delays in funding and financial hardship for the Plaintiffs.

## **LEGAL BACKGROUND**

Congress enacted the IDEA 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex-rel. Charlene F.*, 526 U.S. 66, 68 (1999)). Children are entitled to "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)); *accord Endrew F. ex-rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) (noting that a

11

student offered an educational program providing 'merely more than *de minimis* progress from year to year can hardly be said to have been offered an education at all'").

"The 'centerpiece' of the IDEA and its principal mechanism for achieving this goal is the IEP," *i.e.*, Individualized Education Program. *T.K.*, 810 F.3d at 875. "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child. *Endrew F. ex-rel. Joseph F.*, 580 U.S. 386 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982)). "Where the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875. To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex-rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Following a 30-day resolution period, the parent and school district will participate in an "impartial due process hearing" before an IHO. *Id.* Under New York law, once the IHO renders a decision, any party aggrieved by the decision may request a review by a state review officer ("SRO"), who can affirm or modify the IHO's Order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2)). After that, "[e]ither party may bring a civil action before a federal or state court to review the SRO's decision." 20 U.S.C. § 1415(i)(2)(A)).

During the pendency of the aforementioned judicial proceedings, the IDEA's "pendency provision" also known as the "stay-put provision," codified at 20 U.S.C. § 1415(j), "entitles a disabled child to 'remain in his then-current educational placement." *T.M. ex-rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (quoting 20 U.S.C. § 1415(j)). The core concern of the IDEA is to provide a continuous, uninterrupted education to children with disabilities; accordingly, the pendency provision "maintain[s] the educational status quo" of the child and ensures continuity of services while the parties' dispute is being resolved. See *id.* (citing *Mackey*

12

*ex-rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004). "There is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014) (quotation omitted). "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *Casey K. ex-rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)).

Although the IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*, 744 F.3d at 118–19 (quotation omitted); *see also Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996) ("Without interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all."). The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe*, 790 F.3d at 452.

Determining a child's pendency placement requires the Court to identify the student's "then current educational placement." *Ventura de Paulino*, 959 F.3d at 532. This term can mean either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452.

13

**ARGUMENT**

I. **PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING O.F.'S PENDENCY AT iBRAIN FOR THE 2024-2025 SCHOOL YEAR AND EARLIER SCHOOL YEARS**

Here, the "stay-put" provision of the IDEA acts as an automatic preliminary injunction. The IDEA's "stay-put" provision at 20 U.S.C. § 1415(j) provides that: [e]xcept as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed. 20 U.S.C. § 1415(j). "[T]he stay-put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." *Mackey ex-rel. Thomas M.*, 386 F.3d at 160–61 (quotation omitted). The "stay-put" provision "is, in effect, an automatic preliminary injunction." *Zvi D. by Shirley D.*, 694 F.2d at 906. "[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested the due process hearing." *Id.*

Under IDEA, a child's pendency placement is established by looking to either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452. Plaintiffs bring this action to enforce IHO Fazzino's Pendency Order regarding the Plaintiffs' DPCs for the 2022–23, 2023–24, and 2024–2025 extended school years. [ECF Nos. 1–1, 1–2, 1–3, 1–4]. While Plaintiffs timely and diligently pursue the DPC at the administrative level, O.F. has been attending school at iBRAIN since at least August 22, 2023. IHO Fazzino's Pendency Order correctly determined that iBRAIN is

the Student's last agreed-upon placement, with the basis for pendency in IHO Decision 275761. [ECF No. 28-4]. According to the clear mandate of 20 U.S.C. § 1415(j), this placement at iBRAIN is the basis of O.F.'s pendency program/placement throughout the administrative and judicial proceedings relative to IHO Case No. 275761. Furthermore, as per IHO Fazzino's Pendency Order, it is retroactive to the date of the first DPC filing on June 26, 2024.

O.F.'s Enrollment Contract for the 2024–2025 ESY sets the full tuition at $316,206.80 to be paid in three installments, with the first payment of $53,882.77 due by July 2, 2024, the second installment of $100,675.71 by September 5, 2024, and the third installment of $161,648.32 due by January 2, 2025. O.F.'s Nursing Agreement for the 2024–2025 ESY sets the annual cost of nursing services at $333,608.00 to be paid in three installments: the first payment of $56,848.00 by July 2, 2024, the second installment of $106,216.00 by September 5, 2024, and the third payment of $170,544.00 by January 2, 2025. O.F.'s Transportation Agreement for the 2024–2025 ESY sets the annual cost of transportation services at $191,111.00 to be paid in three separate installments: the first payment of $31,851.25 due by July 2, 2024, the second installment of $63,704.25 due by September 1, 2024, and the final installment of $95,555.50 due by January 1, 2025. The DOE has not paid funding to O.F.'s pendency placement/program. The DOE has been ordered to pay under pendency since November 18, 2024, 218 days ago, and no payments have been made. In contravention of IHO Venning's Pendency Order, DOE has failed to fund O.F.'s pendency program/placement in violation of 20 U.S.C. § 1415(j).

Plaintiffs are undeniably entitled to pendency placement at iBRAIN with related services, including special transportation and nursing services because that was the last agreed-upon placement when they filed their DPC. Plaintiffs are, therefore entitled to a Pendency Order under 20 U.S.C. § 1415(j)'s "automatic injunction" standard and are entitled to a preliminary injunction ordering DOE to implement and fully fund O.F.'s placement at iBRAIN retroactive to June 26,

2024, and until the underlying administrative matters in the consolidated DPCs are concluded.

Furthermore, the traditional preliminary injunction standard does not apply when assessing pendency claims under 20 U.S.C. § 1415(j), however, the Plaintiffs would satisfy the traditional standards if required. Plaintiffs can show a likelihood of success on the merits for Plaintiff-Students' pendency claims for the 2025-2026 SY because **every** special education student is entitled to pendency and each Plaintiff-Student has a final, unappealed administrative order that was issued in their favor, establishing its Pendency placement/program as a matter of law. *T.M. ex rel. A.M.*, 752 F.3d at 152; *Mackey ex rel. Thomas M.*, 386 F.3d at 163; *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005).

Irreparable harm is presumed in pendency-related cases. *Honig v. Doe*, 484 U.S. 305, 328 n.10 (1988). The Second Circuit has consistently upheld this principle, as seen in *Zvi D. by Shirley D.*, 694 F.2d 904, where the Court stated that the stay-put provision is, in effect, an automatic preliminary injunction that does not require a showing of irreparable harm. *Zvi D. by Shirley D.*, 694 F.2d at 905; *see also Angamarca v. New York City Dept. of Educ.*, No. 19 CIV. 2930 (PGG), 2019 WL 3034912, at *1 (S.D.N.Y. July 11, 2019). The equities favor injunctive relief here as courts have repeatedly held evaluating both the balance of the equities and the public interest. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020); *Araujo v. N.Y. City Dep't of Educ.*, No. 20-cv-7032 (LGS), 2020 WL 5701828, at *2 (S.D.N.Y. Sept. 24, 2020); *see also V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017). Federal law ensures that the rights of students with disabilities, and their parents/guardians, are protected. *Forest Grove School Dist.*, 557 U.S. at 239; *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07.  When a student with disabilities is placed at a non-public school, the student shall receive pendency funding while the related administrative disputes are resolved. *Gabel ex rel. L.G.*, 368 F. Supp. 2d at 324 and enforcing statutory obligations under the IDEA serves the public interest by protecting the educational rights of children who are uniquely vulnerable. *See*

*Ventura de Paulino*, 959 F.3d at 529; *V.W. by and through Williams*, 236 F. Supp. 3d 554. Moreover, the protections of the IDEA are rooted in the Constitution's Equal Protection Clause, which underscores the public's vested interest in upholding these rights. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 198 (1982) (noting that the IDEA was enacted to assist states in fulfilling their constitutional responsibilities under the Equal Protection Clause).

## II. PLAINTIFF IS NOT SEEKING IMMEDIATE OR "FAST-TRACK" FUNDING OF PENDENCY PAYMENTS

The point of the ruling in *Mendez* was that, when DOE does not contest pendency, parents are not entitled to "fast-track" payments; DOE may make payments in its "ordinary course of business." The Court noted that DOE had indicated "that it [was] committed to making the requisite payments and will do so voluntarily in the ordinary course of business, without the need for Court intervention . . . ." *Mendez*, 65 F.4th at 60 (internal citation and quotation marks omitted) (alteration in original).

In this current matter, the Plaintiff is not seeking to "fast-track" pendency funding but rather request a reasonable time period in accordance with the tuition, special transportation and nursing agreements. *See* ECF No. 1, ¶ 128. In this matter, the Plaintiff is not seeking "immediate" pendency funding but rather request a reasonable time period in accordance with the tuition, special transportation and nursing agreements. *See id.*

In *LV v. NYC DOE*, No. 03-CV-09917 (LAP), in December 2007, Advocates for Children and Milbank LLP, on behalf of Lead Plaintiffs and the Class, entered into a settlement agreement with the DOE that provides injunctive and compensatory relief to class members. The Settlement was approved by the Honorable Richard J. Holwell at the Settlement Fairness Hearing held on April 10, 2008. Under the settlement, the DOE is required to implement all impartial hearing orders within the time frame stated in the order or 35 calendar days of the date of the order if no

17

time is specified. Orders that require immediate action must be implemented within 7 business days.[1] Furthermore, Judge Loretta A. Preska issued an order in the *LV* class action, "DOE's only lawful course of action is to implement those Orders, full stop." No. 03-CV-09917-(LAP), ECF #258 (February 18, 2021).

Moreover, unlike *Mendez*, where the DOE fully acknowledged its pendency obligations and affirmed it would pay, DOE disputes the full scope of the pendency obligations owed. Indeed, *Mendez* relied in part on *Abrams v. Porter*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 (2d Cir. Dec. 9, 2021). The Second Circuit noted of that case, "Because 'both sides agreed that there was no risk of the students losing their pendency placement,' the Court held that 'the district court did not abuse its discretion in denying an injunction under the IDEA's stay-put provision.'" *Mendez*, 65 F.4th at 63 (quoting *Abrams*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 at *6).

Here, there is a dispute between the Parties as to the DOE's Pendency obligations. DOE has pointedly disputed that it owes pendency payments in accordance with the respective tuition, transportation and nursing service agreements for the 2025-2026 SY, as well as what the Pendency placement/program actually is for Plaintiff-Student, which establishes precisely the kind of dispute that was envisioned in *Mendez* and corrected in *Moonsammy*.

As such, the Plaintiff does not request a "fast track" of pendency payments like in *Mendez*. Rather, the Plaintiff only requests a preliminary injunction to set forth DOE's pendency obligations and a reasonable timeline for DOE to implement the orders and directly fund the Plaintiff-Student's pendency placement at iBRAIN.

### III.  DEFENDANTS HAVE GRANTED THEMSELVES A STAY

Plaintiff submits the DOE, by ignoring and refusing to implement final orders as required by

---

[1] *See* https://advocatesforchildren.org/case/l-v-v-nyc-department-of-education/.

New York Law and the IDEA, has effectively granted itself a stay of its Pendency obligations.

Courts of various jurisdictions which have considered whether a school district has the right to an injunction stay of Pendency obligations and have consistently determined a district "*must* meet the established standards for granting a stay." *Draper v. Atlanta Indep. Sch. Sys.,* 2006 U.S. Dist. LEXIS 40964 (N.D. Ga. June 19, 2006) (denying district's motion to stay enforcement of hearing officer's decision because district did not meet the standards governing preliminary injunctive relief) (emphasis added); *see, e.g.*, *Tamalpais Union High Sch. Dist. v. D.W.*, 2016 U.S. Dist. Lexis 137971 (N.D. Cal., October 4, 2016); *Bd. of Educ. of the Cnty. of Boone v. K.M.*, Civil Action No. 2:14 CV 10563, at *5 (S.D.W. Va. Mar. 31, 2015); *John M. v. Bd. Of Educ.*, 2006 U.S. Dist. LEXIS 73826 at 20 (N.D. Ill. September 26, 2006).

Herein, and as shown above and in Plaintiff's Complaint, the DOE was made aware of Plaintiff's claim and legal basis for Pendency at the time the Plaintiff filed her TDN and subsequent Due Process Complaint. Yet, the DOE has refused to comply with its Pendency obligations. Regardless, even though the DOE has not sought an actual stay of its pendency obligations in state or federal court, the DOE would not be eligible for one. Thus, the DOE is liable to Plaintiff for the amount of pendency funding it should have *already* provided to comply with its Pendency obligation "unless and until the District [is] granted a stay." *Id.* at 35-36; see also *Casey K. v. St. Anne Community High School District No. 302,* 400 F. 3d 508, 511 (7th Cir. 2005) (comparing the automatic statutory injunction created by 20 U.S.C. § 1415(j) to an automatic stay in bankruptcy and finding that "*violation of the stay- put provision [is] punishable by contempt.*") (emphasis added).

Furthermore, the Courts have consistently ruled that a school district must begin implementing a pendency order *upon its issuance. See Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009). Notably, the fact the DOE is "contemplating an appeal" of an order is not a sufficient basis to entitle it to a stay of its Pendency obligations while the appeals process remains ongoing. *See id.* ("Ultimately, refusing to enforce the stay put provision during the appeals

19

process would force parents to choose between leaving their children in an education setting which potentially fails to meet minimum legal standards, and placing the child in private school at their own cost. *Congress sought to eliminate this dilemma through its enactment of § 1415(j).*") (emphasis added); *see also Susquenita Sch. Dist. v. Raelee S. by & through Heidi S.,* 96 F.3d 78, 86 (3d Cir. 1996) ("[T]he school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position").

Some jurisdictions have gone even further, ruling that, because the stay-put provision creates an automatic injunction to ensure pendency for a disabled student, the stay-put provision *precludes* the issuance of an order staying enforcement of a pendency order. *See, e.g., John M. v. Bd. Of Educ.*, 2006 U.S. Dist. LEXIS 73826, at *20 ("[T]he general public would be harmed if a stay were granted on the stay-put placement issue. Congress purposefully legislated in 20 U.S.C. § 1415(j) that disabled, non-disruptive students in proceedings with the school regarding their IEPs would be allowed to continue under their then-current educational placement. *Staying the grant of this relief would undermine Congressional intent.*") (emphasis added); *Sch. Dist. of Phila. v. Kirsch*, 2017 U.S. Dist. LEXIS 3907, at **5-7 (denying district's motion to stay enforcement of pendency order because Congressional intent requires that result); *Bd. of Educ. of the Cnty. of Boone v. K.M., supra,* at *5 (denying district's motion for a stay because it "runs afoul of § 1415(j)"). Congress' intent in instituting an automatic injunction in favor of disabled students in the form of pendency is so powerful that many jurisdictions will not cast the automatic injunction aside, even where a school district has directly challenged it by seeking the injunctive relief of a stay. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a preliminary injunction declaring that Student O.F.'s pendency placement/program under 20 U.S.C. § 1415(j) of the IDEA, retroactive to June 26, 2024 is at iBRAIN, including special transportation and nursing services as per the terms of their respective agreements.

20

Dated: August 27, 2025
New York, New York

                                          Respectfully submitted,
                                          Liberty & Freedom Legal Group
                                          *Attorneys for Plaintiffs*

                              By:    ***/s/ Nicole Lancia***
                                          Nicole Lancia, Esq.
                                          105 East 34th Street, #190
                                          New York, NY 10016
                                          (646) 850-5035
                                          nicole@pabilaw.org