**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**BINTU KABBA,** ***individually and as parent and natural guardian of O.F.,***

**Plaintiff,**

**-against-**

**MELISSA AVILES-RAMOS,** ***in her official capacity as Chancellor of the New York City Department of Education,*** **and NEW YORK CITY DEPARTMENT OF EDUCATION,**

**Defendants.**

**1:25-cv-02282 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge**

Plaintiff Bintu Kabba ("Plaintiff"), as parent and natural guardian of O.F. and in her individual capacity, brings this action pursuant to the Individuals with Disabilities Act (the "IDEA"), 20 U.S.C. § 1400 *et seq*., against the New York City Department of Education (the "DOE") and Melissa Aviles-Ramos, in her official capacity as DOE Chancellor (together with the DOE, "Defendants"). Plaintiff seeks implementation of a pendency order that required the DOE to fund O.F.'s educational placement at the International Institute for the Brain ("iBRAIN"), including tuition and related services, as well as special transportation and nursing services. Now before the Court are the Parties' cross motions for summary judgment. The Parties dispute what services should have been implemented as a result of the Pendency Order. Plaintiff argues pendency lies in the May 2024 IEP while Defendants argue pendency lies in the CPSE IEP from 2023. Because Plaintiff received services pursuant to the May 2024 IEP, Defendants contend Plaintiff is not receiving the program delineated in the Pendency order and is thus not entitled to reimbursement for tuition and services. The Court finds that pendency lies in the

CPSE August 22, 2023 IEP because it was the last agreed upon and implemented IEP. As such, Plaintiff fails to plausibly allege a violation of the stay-put provision and entitlement to relief requiring the City to pay for iBRAIN's services. For these reasons, Plaintiff's motion is **DENIED** and Defendants' motion is **GRANTED**.

## BACKGROUND

### I. Factual History

Plaintiff Bintu Kabba is the parent and natural guardian of O.F. ECF No. 57, ¶ 2. O.F. is classified as a student with disabilities. *Id.*, ¶ 3. O.F. is non-ambulatory. *Id.*, ¶ 5. On August 22, 2023, a Committee on Preschool Special Education ("CPSE") convened to create an IEP ("Individualized education Program") for O.F. for the purposes of providing a FAPE ("free appropriate public education") for the 2023-2024 school year. *See* ECF No. 28, ¶ 34. The August 22, 2023 CPSE IEP recommended the following services: Speech Language Therapy ("SLT") two times a week for 30 minutes each, Occupational Therapy ("OT") two times a week for 30 minutes each, Physical Therapy ("PT") three times a week for thirty minutes each, and Parent Counseling and Training ("PCT") four times a year for sixty minutes each. The CPSE IEP also recommended transportation services. *See id*, ¶ 36. On May 26, 2024, the International Institute for the Brain ("iBRAIN") created an IEP for O.F. for the 2024-2025 school year. *See* ECF No. 28, ¶ 46. The iBRAIN IEP recommended the following services: a 6:1:1 classroom size, OT four times a week for 60 minutes each, PT five times a week for 60 minutes each, SLT five times a week for 60 minutes each, Music Therapy ("MT") twice a week for 60 minutes each, and PCT once a month for 60 minutes each. *See id.*, ¶ 52.

On June 25, 2024, Plaintiff filed a Due Process Complaint ("DPC") alleging that the DOE failed to provide O.F. a Free Appropriate Public Education ("FAPE") for the 2023-2024 school

year. *Id*., ¶ 1. On July 2, 2024, Plaintiff filed a DPC alleging that the DOE failed to provide O.F. a FAPE for the 2024-2025 school year. *Id*., ¶ 32. These two DPCs were consolidated into Case No. 275761. *Id*., ¶ 3. On November 18, 2024, impartial hearing officer ("IHO") Catina Venning issued a Pendency Order. *Id*., ¶ 4. In her Pendency Order, the IHO acknowledged that "[t]he District failed to issue, at any point between the complaint and the pendency hearing, a school location letter (SLL) at which Student could receive FAPE." ECF No. 1-4 at 3-4. As such, the IHO noted that while pendency normally does not lie in a "specific brick and mortar school or specific service provider," Plaintiff had no choice but to enroll O.F. in a school after the District failed to send a SLL identifying an appropriate placement. As such, "[t]he District has lost some ability to determine which school under these conditions." *Id*. at 3-4. Ultimately, the IHO ordered the following: "I find that Student's pendency program lies in the CPSE IEP (August 22, 2023) at iBrain until a final determination is made in these proceedings." *Id*. at 4. The IHO also held that the pendency determination was retroactive to the date of filing of the DPC. *See* id. While the IHO considered that the CPSE IEP may be outdated as a pre-school program once O.F.'s Turning Five IEP was drafted, the Turning Five IEP was not to be in effective until September 5, 2024; the DPC was filed on July 2, 2024. *Id*. at 3. Thus, the last agreed upon IEP was the August 22, 2023 CPSE IEP. *Id*. In the Pendency Order, the IHO stated that O.F. "currently attends a 6:1:1 class and receives the following services; OT: four (4) times per week for 60 minutes; PT: five (5) times per week for 60 minutes; SLT five (5) times per week for 60 minutes; MT: two (2) times per week for 60 minutes; [Assistive Technology]: one (1) time per week for 60 minutes; and PCT one (1) time per month for 60 minutes." *Id*. at 1-2. Throughout the 2024-2025 school year at iBRAIN, O.F. continued to receive the specific program described in the IHO's Pendency Order. *See* ECF No. 53, ¶ 7. On June 25, 2025, IHO Venning issued a Finding of Fact and Decision ("FOFD") on Case

No. 275761, finding the unilateral placement at iBRAIN was not appropriate. *See* ECF No. 53, ¶¶ 9-10. Defendants thereafter appealed the IHO's FOFD, specifically as to the pendency placement issue. *See* ECF No. 45 at 4.

## II. Procedural History

On March 19, 2025, Plaintiff filed her complaint, initiating the action. *See* ECF No. 1. On March 26, 2025, Plaintiff filed a motion for a Preliminary Injunction ("PI") to require Defendants to fund O.F.'s pendency placement at the International Institute for the Brain ("iBRAIN") for the 2024-2025 and earlier school years, including special transportation services. *See* ECF No. 7. The Court thereafter issued an Order to Show Cause ("OSHOW") as to why Plaintiff's requested PI should not be granted. *See* ECF No. 9. Following an initial conference on the requested PI, the Court ordered the parties to file the CPSE IEP and to meet and confer about the matter. *See* ECF No. 15. Defendants filed their answer to the initial complaint on May 14, 2025. *See* ECF No. 21. The Court thereafter reviewed the CPSE IEP dated August 22, 2023 along with the parties' joint status report and determined the parties continued to dispute whether the IEP includes nursing services. *See* ECF Nos. 19, 20, 22. Thus, the Court ordered the parties to brief two questions: (1) Does the IEP explicitly or implicitly include nursing services?, and (2) If the IEP does not, and considering that IHO Venning's pendency order references no additional services, what legal authority, if any, permits the Court to grant relief pursuant to 20 U.S.C. §1415(j) beyond the specific services in the IEP? *See* ECF No. 22. Following additional submissions from the parties on the issue, the Court conducted a status conference. *See* ECF Nos. 23, 25-27. Following the conference, the Court denied without prejudice Plaintiff's pending motion for a PI and granted Plaintiff leave to file an amended complaint. *See* ECF No. 27.

On July 24, 2025, Plaintiff filed a First Amended Complaint ("FAC" or "amended complaint"). *See* ECF No. 28. On August 14, 2025, Defendants filed an answer to the amended complaint. *See* ECF No. 33. On August 27, 2025, Plaintiff filed a renewed motion for a PI. *See* ECF Nos. 35-36. On August 29, 2025, the Court issued an OSHOW as to why Plaintiff's requested PI should not be granted. *See* ECF No. 38. Defendants submitted their opposition on September 12, 2025, and Plaintiff submitted her reply on September 18, 2025. *See* ECF Nos. 40-41. Following a conference on the matter, the Court issued an order denying the renewed motion for a preliminary injunction and granting Defendants leave to file a motion for summary judgment. *See* ECF Nos. 42-43. On October 16, 2025, Defendants filed their motion for summary judgment. *See* ECF No. 44. On November 13, 2025, Plaintiff filed her cross motion for summary judgment. *See* ECF No. 49. Both motions are fully briefed. *See* ECF Nos. 45 (Defendants' memorandum in support), 46 (Defendants' Rule 56.1 Statement), 50 (Plaintiff's memorandum of law in support of cross motion and in opposition to Defendants' motion), 51 (Plaintiff's Rule 56.1 Statement), 52 (Plaintiff's Declaration and Exhibits), 53 (Plaintiff's Response to Defendants' Rule 56.1 Statement), 56 (Defendants' reply in support of tis motion and opposition to Plaintiff's cross motion), 57 (Defendants' counter statement to Plaintiff's Rule 56.1 Statement), and 59 (Plaintiff's reply in support of its cross motion).

## LEGAL STANDARD

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)); *see also M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138 (2d Cir.

2013) ("Summary judgement in the IDEA context, therefore, is only a pragmatic procedural mechanism for reviewing administrative decisions." (internal quotations and citations omitted)). "Accordingly, the usual summary judgment standards do not apply." *Phillips v. Aviles-Ramos*, No. 23-cv-02140 (JPC) (JW), 2025 WL 934342, at *5 (S.D.N.Y. Mar. 27, 2025). "Instead, when reviewing the IDEA administrative decisions, a federal court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence." *Id*. (citing to 20 U.S.C. § 1415(i)(2)(C)). When conducting this review, a federal court "must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015) (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)). As such, the inquiry "is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex rel. Travis D. v. N.Y.C. Dep't of Educ.*, 550 F. Supp. 2d 420, 429 n.10 (S.D.N.Y. 2008) (internal citation omitted). "As the Second Circuit has explained, judicial review of state agency proceedings under the IDEA falls between two well-known standards of review, 'requir[ing] a more critical appraisal of the agency determination than clear-error review' but 'fall[ing] well short of complete *de novo* review.'" *Donahue v. Banks*, 2023 U.S. Dist. LEXIS 176574, at *22 (S.D.N.Y. Sept. 30, 2023) (quoting *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014)). Indeed, "'[i]n deciding what weight is due . . . the analysis often will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive,' such as the 'quality and thoroughness of the reasoning, the type of determination

under review, and whether the decision is based on the administrative body's familiarity with the evidence and the witnesses.'" *See id*. (quoting *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 218 (2d Cir. 2014)).

## DISCUSSION

### I. Violation of the Stay Put Provision Generally

#### a. Purpose of the Stay Put Provision

"Under the IDEA, federal money is available to assist state and local agencies in educating handicapped children, provided that the recipients of those funds comply with various provisions of the Act." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002) (internal quotations omitted). "Through its state and local educational agencies, a participating state must make '[a] free appropriate public education . . . available to all children with disabilities residing in the State." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (citing to 20 U.S.C. § 1412(a)(1)(A)). To do so, these agencies "must issue individualized educational plans ("IEPs") specifying 'the educational needs of [the] handicapped child and the specially designed instruction and related services to be employed to meet those needs.'" *Id*. (citation omitted). "If a state fails in its obligation to provide a free appropriate public education to a handicapped child, the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006). The parents' entitlement to reimbursement during the review process is governed by the IDEA's "pendency" or "stay-put" provision.

"The IDEA's stay-put provision provides in relevant part that 'during the pendency of any [administrative and judicial] proceedings conducted pursuant to this section, unless the [school district] . . . and the parents otherwise agree, the child shall remain in the then-current educational

placement of the child.'" *Ventura de Paulino v. New York City Dep't of Educ.,* 959 F.3d 519, 531 (2d Cir. 2020) (internal citations omitted). Thus, a school district is required "'to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete.'" *Id*. To be clear, "the IDEA does not authorize a school district to recoup payments made for educational services pursuant to the stay-put provision (i.e., pendency services)." *Id*. Indeed, "Congress's policy choice was that a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings." *Id*. The "inquiry generally focuses on identifying the child's 'then-current educational placement,' as it is the only educational program the district is obligated to pay for during the pendency of an IEP dispute." *Id*. at 532.

**b. How to Evaluate the Stay Put Provision**

"To determine a child's 'then-current educational placement,' a court typically looks to: (1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'" *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d at 452 (citing *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004)). Most often, "[t]he term '*then-current* educational placement' in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d at 532 (emphasis in original). "[A]n initial placement is made by the school district upon the consent of the parent." *Id*. Indeed, "implicitly in the concept of 'educational placement' in the stay-put provision (i.e., a

pendency placement) is the idea that the parents and the school district must agree either expressly or as impliedly by law to a child's educational program." *Id*. In other words, a child's educational placement program may be changed if "both the school district and the parents agree on what the new placement should be" or "if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate." *Id*.

Further, it is worth noting "that the term 'operative placement' has its origin in cases where the school district attempts to move the child to a new school without the parents' consent, or where there is no previously implemented IEP so that the current placement provided by the school district is considered to be the pendency placement for purposes of the stay-put provision." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d at 536. Thus, the "operative placement" is only relied upon in determining the "then-current educational placement" in situations where there was never an implemented IEP or last agreed-upon educational program. *See id*. Those circumstances are not present here.

## II. Stay Put Provision In This Case

In the present action, the IHO found the following: "I find that Student's pendency program lies in the CPSE IEP (August 22, 2023) at iBrain until a final determination is made in these proceedings." *See* ECF No. 1-4 at 4. The Parties do not contest that the IHO found the physical placement to be at iBRAIN; rather, the Parties dispute what services should have been implemented as a result of the Pendency Order, the CPSE IEP from 2023 or the May 2024 IEP. As the Parties seem to agree, and as the IHO acknowledged at the time of the issuance of the Pendency Order, O.F. received services pursuant to the May 26, 2024 IEP rather than the August 22, 2023 CPSE IEP. As such, Defendants argue that because "the Student is not receiving the program delineated in the Pendency Order, Plaintiff is not entitled to reimbursement for tuition

or transportation." *See* ECF No. 45 at 7. Plaintiff, however, argues that "the educational program, provided by iBRAIN, as considered and approved by the IHO in her pendency order, was the operative pendency placement." *See* ECF No. 50 at 12. For the reasons discussed above regarding reliance upon the "operative placement," this argument is unavailing. "A parent cannot unilaterally transfer his or her child and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a pendency basis." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d at 536. Indeed, "[t]hat argument effectively renders the stay-put provision meaningless by denying any interest of a school district in resolving how the student's agreed-upon educational program must be provided and funded." *See id*. While Plaintiff may have requested the IHO require that "the DOE maintain O.F.'s placement at iBRAIN as the status quo," the IHO ultimately found that "Student's pendency program lies in the CPSE IEP (August 22, 2023) at iBrain until a final determination is made in these proceedings." *See* ECF No. 1-4 at 5. Indeed, the IHO acknowledged in her Pendency Order that "Parent requested pendency as a continuation of the program Student has attended since the 2022-2023 school (SY23) at iBrain based on the 'last agreed upon' and implemented IEP." *See id*. at 4. Nonetheless, the IHO found pendency lies in the specific services and programs outlined in the CPSE IEP. *See id*. at 5. The Court presumes the IHO meant what she said in finding pendency lies in the August 22, 2023 CPSE IEP. *See Phillips v. Aviles-Ramos*, No. 23 Civ. 2140 (JPC), 2025 WL 1547490. At *3 (S.D.N.Y. May 29, 2025) ("The Court presumes that administrative officers like the IHO choose their words with care and mean what they say.). Indeed, the CPSE IEP was the last agreed upon and implemented IEP, as the IHO acknowledged that the Turning Five IEP was not yet in effect when Parent filed the complaint on July 2, 2024. *See* ECF No. 1-4 at 4. While O.F. was receiving services pursuant to the May 22, 2024 IEP, this was not an agreed

upon placement. As the IHO found, the last agreed upon and implemented IEP was the CPSE August 22, 2023 IEP. *See* ECF No. 1-4 at 4. Accordingly, Plaintiff has failed to plausibly allege a violation of the stay-put provision and an entitlement to relief requiring the City to pay for iBRAIN's services.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED.** The Clerk of the Court is respectfully directed to terminate the pending motions at ECF Nos. 44 and 49 and close this case.

**SO ORDERED.**

**Dated: August 27 2026**

**New York, New York**

**ANDREW L. CARTER, JR.**

**United States District Judge**